RECEIVED
06/02/2025
KELLY L. STEPHENS, Clerk

No. 25-1456

# In the United States Court of Appeals for the Sixth Circuit

ANDREW LINARES

*Plaintiff-Appellant*

*v.*

LOWE'S PRO SUPPLY CO.

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, NO. 2:25-CV-11027-RJW-KGA

**PRINCIPAL BRIEF FOR PLAINTIFF-APPELLANT**

ANDREW LINARES
*IN PRO PER*
*4450 HARDING ST*
*DEARBORN HEIGHTS, MI 48125*
*734-205-8788*
*andrew.ace.linares@nfnrltd.com*

*Appearing In Propria Persona for Plaintiff-Appellant*

May 31, 2025

# TABLE OF CONTENTS

I.    JURISDICTIONAL STATEMENT .................................................................. 11

II.   STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................................................................. 11

III.  STATEMENT OF THE CASE .................................................................. 12

    A. Factual Background .................................................................. 12

    B. Procedural Background .................................................................. 14

    C. Statutory Background .................................................................. 16

IV.  SUMMARY OF THE ARGUMENT .................................................................. 21

V.   STANDARD OF REVIEW .................................................................. 23

VI.  ARGUMENT .................................................................. 25

    1) Did the District Court Misapply the Rooker-Feldman Doctrine By Dismissing a Federal Statutory Claim Under the FAA That Sought Only Prospective Relief and Did Not Challenge a State Court Judgment? .................................................................. 25

        A. The District Court Misapplied the Rooker-Feldman Doctrine by Misconstruing the Nature and Objective of the Complaint .................................................................. 27

        B. The District Court's Sua Sponte Dismissal Without Hearing or Responsive Process Violated Core Fairness Principles and Operated as a Structural Bar to Forum Access .................................................................. 28

    2) Did The District Court Abuse Its Discretion in Denying Leave to Amend Where the Proposed Complaint Cured the Alleged Jurisdictional Defect, Asserted a Valid Federal Claim, and Complied with Rule 15(a)? .................................................................. 28

    A. The Court Denied Leave to Amend Based on a New Merits-Based Interpretation of the Arbitration Clause ........................................................... 30

    B. This Futility-Based Ruling Was Procedurally Deficient Under Tingler and Rule 15 ........................................................... 31

    C. The Amended Complaint Stated a Plausible Federal Claim and Should Have Been Allowed to Proceed ........................................................... 32

3) Did the District Court Exceed Its Jurisdiction Under the FAA By Adjudicating the Scope of Arbitrability, Despite the Parties' Incorporation of AAA Rules That Clearly and Unmistakably Delegated That Question to The Arbitrator ……………………………………………………………. 32

    A. The FAA Requires Courts to Honor Delegation of Arbitrability Questions Where Clear and Unmistakable Evidence Exists ........................................................... 35

    B. The District Court Improperly Resolved Arbitrability on the Merits Despite Recognizing the Delegation Clause ........................................................... 36

    C. The Court's Exercise of Jurisdiction Was Improper and the Judgment Must Be Vacated ........................................................... 37

4) Did the District Court Err in Denying Rule 60(b)(4) Relief Because the Judgment Was Void for Exceeding Its Statutory Authority and for Violating Appellant's Right to Due Process? ……………………………………………………………. 38

    A. The Court Lacked Jurisdiction to Issue a Merits-Based Ruling After Acknowledging a Valid Arbitration Clause That Governed the Dispute ........................................................... 40

    B. The Judgment Was Also Void Because It Was Entered Without Notice or an Opportunity to Respond ........................................................... 43

5) Did the District Court Violate Due Process by Imposing the Pre-filing Restriction Without Notice, An Opportunity to Be Heard, or Any Finding of Abusive Litigation Conduct? ......................................................................... 45

    A. The Court Failed to Provide Requisite Notice and Opportunity to Be Heard ............................................................. 46

    B. The Court Failed to Identify a Record of Vexatious or Frivolous Conduct ............................................................. 46

    C. The Restriction Is Overbroad and Chills Access to Lawful Relief ............................................................................ 48

VII.   CONCLUSION AND PRAYER FOR RELIEF ...................... 49

VIII.  CERTIFICATE OF COMPLIANCE ..................................... 51

IX.   CERTIFICATE OF SERVICE ............................................... 52

X.    ADDENDUM: REFERENCES AND INDEX ........................ 53

    ❖ 9 U.S.C. §§ 2, 3, 4 (Federal Arbitration Act) .................. 53

    ❖ Fed. R. Civ. P. 15(a)(2), 60(b)(4) ................................... 53

    ❖ Lowe's Terms of Sale, Section 5 (Arbitration clause) ....... 53

    ❖ Index: Record On Appeal .............................................. 54

# TABLE OF AUTHORITIES

**Cases**                                                              **Pages**

*Antoine v. Atlas Turner, Inc.,*
66 F.3d 105 (6th Cir. 1995)……………………………………………………22

*Apple v. Glenn,*
183 F.3d 477 (6th Cir. 1999)………………………………………......................23

*Blanton v. Domino's Pizza Franchising LLC,*
962 F.3d 842 (6th Cir. 2020)…………........................22, 27, 31, 33, 34, 35, 36, 39

*Ciccio v. SmileDirectClub, LLC,*
2 F.4th 577 (6th Cir. 2021)………………………………………………….....31, 37

*Doe v. Mich. State Univ.,*
989 F.3d 418 (6th Cir. 2021)………………………………………................21, 29

*Doe v. Oberlin College,*
60 F.4th 345 (6th Cir. 2023)…………………………………..……………..29

*Espinosa v. United Student Aid Funds, Inc.,*
559 U.S. 271 (2010)……………………………………………………………42

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280 (2005)………………………………………….…….………21, 25

*Feathers v. Chevron U.S.A., Inc.,*
141 F.3d 264 (6th Cir. 1998)………………………………………...........23, 44, 45

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995)……………………………………………………………32

*Foman v. Davis,*
371 U.S. 178 (1962)…………………………………………………..21, 28

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019)…………………………..22, 27, 31, 32, 33, 34, 34, 35, 36

*I.C. v. StockX, LLC,*
19 F.4th 873 (6th Cir. 2021)……………………………………………………37

*Kindhearts v Geithner,*
647F.Supp.2d 857 (N.D. Ohio 2009)…………………………………………..46

*McCormick v. Braverman,*
451 F.3d 382 (6th Cir. 2006)……………………………………….…....21, 23

*Micks-Harms v. Nichols,*
No. 18-12634, 2019 U.S. Dist. LEXIS 188006…………………………………..45

*Ortman v. Thomas,*
99 F.3d 807 (6th Cir. 1996)………………………………………...........23, 44, 46

*Rent-A-Center, W., Inc. v. Jackson,*
561 U.S. 63 (2010)…………………………………………………….27, 31, 37

*Swiger v. Rosette,*
989 F.3d 501 (6th Cir. 2021)…………………………………………...……31

*Tingler v. Marshall,*
716 F.2d 1109, 1112 (6th Cir. 1983)……………………………….... 21, 25, 29, 42

*United Student Aid Funds, Inc v.Espinosa,*
559 U.S. 260 (2010)……………………………………………………22, 37, 41

*United States v. Sineneng-Smith,*
140 S. Ct. 1575 (2020)……………………………………………..27, 32

*VanderKodde v. Mary Jane M. Elliott, P.C.,*
951 F.3d 397 (6th Cir. 2020)…………………………………...............21, 24

*Vineyard v. Collier,*
990 F.3d 1094 (8th Cir. 2021)………………………………………….…46

*Wagoner v. Wagoner,*
938 F.2d 1120 (10th Cir. 1991)…………………………………...……..37

**Statutes**

9 U.S.C. § 2 …………………………………….…………12, 13, 18, 25, 26, 29, 32, 33

9 U.S.C. § 3………………………………………………….13, 19, 20, 22, 25

9 U.S.C. § 4……………………………………...13, 18, 20, 22, 23, 26, 29, 33

28 U.S.C. § 1291……………………………………………………...9

28 U.S.C. §1331…………………………………………………………9

28 U.S.C. § 1332…………………………………………………………...9

28 U.S.C. § 1651……………………………………………...13, 38

28 U.S.C. § 1915(e)(2)(B)……………………………………………...13

**Rules**

Fed. R. Civ. P. 15(a)(2)……………………………………13, 19, 29, 31

Fed. R. Civ. P. 59(e)……………………………………………13

Fed. R. Civ. P. 60(b)(4)……………………………………13, 18, 20, 35, 36, 37

AAA Commercial Arbitration Rule R-7(a)……………………………….36

## INTRODUCTION

This appeal arises from a series of judicial actions that, taken together, denied Appellant meaningful access to a federal forum. Seeking only to enforce his personal rights under a commercial arbitration agreement, Appellant brought a narrow, facially valid claim under the Federal Arbitration Act (FAA), 9 U.S.C. § 4. He was not a party to the underlying state court default judgment entered against his former nonprofit employer, HATSOFF Holdings Inc., and was given no opportunity to appear or defend his legal interests in that proceeding. Yet when he turned to federal court—asserting a prospective right to compel arbitration under a contract that expressly incorporated AAA rules—his claims were repeatedly dismissed or foreclosed without process.

To be clear, Appellant fully acknowledges and respects the court's responsibility to manage its docket, conserve judicial resources, and safeguard against abuse of the informa pauperis privilege. He recognizes that courts have broad discretion to impose sanctions under Rule 11, 28 U.S.C. § 1927, and their inherent authority under the All-Writs Act, 28 U.S.C. § 1651, in cases involving serial, duplicative, or bad-faith filings. He does not question the importance of judicial economy, nor the burden excessive litigation imposes on courts and litigants alike. But this case bears no resemblance to those circumstances. The filings here were limited in number, directly responsive to the court's own rulings, and procedurally appropriate at every

stage. The distance between those who abuse the system and Appellant's conduct in this case is not one of degree—it is categorical. It is not even in the same galaxy.

The first indication that Appellant's claim was facially valid came immediately. On April 11, 2025, Appellant filed a motion for a temporary restraining order (TRO) to preserve the status quo during active enforcement efforts in state court. The district court scheduled a hearing for April 18, 2025—an implicit recognition that the claim presented a plausible risk of irreparable harm and warranted consideration under Rule 65. But that hearing never occurred. Just two days before it was set to proceed, the district court sua sponte dismissed the case under the Rooker-Feldman doctrine. The order was issued without briefing, opposition, or notice that dismissal was under consideration. In the same ruling, the court mooted the TRO motion—extinguishing both substantive and procedural remedies in a single, preemptive stroke.

In good faith, Appellant responded by filing a Motion for Leave to File a First Amended Complaint. The amended complaint removed the corporate Plaintiff-Appellant, narrowed the scope of relief, and explicitly disclaimed any intent to disturb or invalidate the state court judgment. Whether or not the original complaint had ever implicated Rooker-Feldman (it did not), the amended complaint plainly did not. It sought only prospective relief under the FAA. Yet the district court denied leave to amend—not based on the prior jurisdictional rationale, but on a new, sua sponte interpretation of the arbitration clause: that it applied only to claims brought

by customers, not to nonpayment claims brought by the seller. This interpretation was introduced by the court itself, without briefing and without addressing whether the proposed amendment cured the earlier grounds for dismissal.

Appellant then filed a motion for reconsideration and a renewed motion for leave to amend—his first opportunity to respond to the court's newly introduced futility rationale. Both motions directly addressed the court's interpretation of the arbitration clause by explaining that the agreement incorporated the AAA rules, which clearly and unmistakably delegate arbitrability questions to the arbitrator. The court denied both motions in a single order. It did so without engaging the FAA's delegation provisions, without reconsidering whether jurisdiction had been properly invoked, and without offering any meaningful legal analysis. The merits remained unaddressed. The dismissal rationale simply shifted again—without notice, without briefing, and without process.

In response, Appellant filed a Rule 60(b)(4) motion to vacate that order as void. The motion argued that once the court acknowledged the existence of a valid arbitration agreement and recognized that the Terms of Sale governed the dispute, it lacked subject-matter jurisdiction to adjudicate arbitrability. Rather than engage with that threshold jurisdictional question, the court denied the motion and imposed a sweeping prefiling restriction. That restriction was entered without notice, without findings, and without any record of abusive litigation conduct. It barred Appellant

from filing any future motions in the case without prior leave of court—yet simultaneously prohibited him from even requesting such leave without violating the order. In practical effect, the court issued a standing order that barred all further access to judicial relief.

Over the course of the case, Appellant filed only four substantive motions:

1. A motion for a temporary restraining order;

2. A motion for leave to amend, responding to the court's sua sponte dismissal;

3. A motion for reconsideration of a new, unbriefed legal theory;

4. A Rule 60(b)(4) motion challenging the validity of an ultra vires order.

None were repetitive. None were frivolous. And none were granted. At no point was Appellant afforded the basic procedural protections of adversarial testing, responsive briefing, or a hearing on the merits.

This appeal is not about disagreement over legal interpretation. It is about being shut out of the courthouse entirely. It is about the progressive narrowing of procedural opportunity—dismissal without notice, denial of amendment without analysis, shifting grounds for rejection, and the imposition of sanctions without findings. The pattern that emerges is not one of docket management, but of procedural foreclosure. This Court's intervention is necessary to correct that pattern, restore the integrity of federal adjudication, and reaffirm that judicial efficiency, however important, cannot come at the expense of access to justice.

# I. JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 2201, as Appellant brought claims under the Federal Arbitration Act, 9 U.S.C. § 4, and sought declaratory relief concerning a commercial dispute between citizens of different states. The district court entered final judgment through a series of dispositive orders between April 16 and May 9, 2025. Appellant timely filed a Notice of Appeal on May 12, 2025. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# II. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the district court misapply the Rooker-Feldman doctrine by dismissing a federal statutory claim under the FAA that sought only prospective relief and did not challenge a state court judgment?

2. Did the district court abuse its discretion by denying leave to amend where the proposed First Amended Complaint eliminated the basis for dismissal, asserted a viable federal claim under the FAA, and complied with Rule 15(a)(2)?

3. Did the district court exceed its jurisdiction under the FAA by adjudicating the scope of arbitrability, despite the parties' incorporation of AAA rules that clearly and unmistakably delegated that question to the arbitrator?

4. Did the district court err in denying Rule 60(b)(4) relief where it lacked authority to enter the challenged order after acknowledging a valid arbitration clause

governed the dispute?

**5.** Did the district court violate Appellant's right to due process by imposing a prefiling restriction without notice, opportunity to be heard, or any record of abusive litigation conduct?

## III.       STATEMENT OF THE CASE

### A. Factual Background

Plaintiff-Appellant Andrew Linares is a Michigan resident and the former Executive Director of HATSOFF Holdings Inc., a Michigan nonprofit corporation that ceased operations in 2024. During its period of activity, HATSOFF purchased materials and supplies through Lowe's Pro Supply Co., utilizing the company's commercial website, [https://www.lowesprosupply.com](https://www.lowesprosupply.com). At all relevant times, transactions conducted on the site were governed by Lowe's published "Terms of Sale," accessible at [https://www.lowesprosupply.com/terms-of-sale/](https://www.lowesprosupply.com/terms-of-sale/), and expressly incorporated by reference at the point of purchase. These Terms included a mandatory arbitration provision requiring that "all claims by Customer" be resolved through binding arbitration administered by the American Arbitration Association (AAA). The arbitration clause further incorporated the AAA Rules, which delegate threshold questions of arbitrability to the arbitrator.

Appellant formally resigned from his position at HATSOFF in August 2024. Several months later, in October 2024, Lowe's Pro Supply obtained a default judgment

against the corporation in the Third Judicial Circuit Court of Michigan. Appellant was not a named party in the state court action, was not served, and had no notice or opportunity to appear or respond.

On January 21, 2025, Appellant was personally served with a subpoena issued in connection with post-judgment enforcement efforts. The subpoena commanded him to appear for a creditor's examination and to produce a broad array of records, including extensive documentation concerning HATSOFF's corporate finances and operations. The subpoena made no distinction between corporate records and those held in a personal capacity.

Following service, Appellant promptly contacted counsel for Lowe's Pro Supply to explain that he had resigned from the corporation months earlier, no longer had access to any institutional records, and lacked the financial resources to produce the documents requested. He further advised that, as a 100% service-disabled veteran, any response would require a reasonable accommodation in the form of narrowed scope and extended time for compliance. Appellant offered to produce all personal records within his possession and expressed willingness to comply with the subpoena as issued if Lowe's would assume the cost of production. These offers were declined.

Faced with continued enforcement efforts targeting him personally—despite having no legal representation in the state matter and no opportunity to object—Appellant

conducted a review of the operative Terms of Sale and discovered the mandatory arbitration clause. Based on this review, he concluded that the dispute giving rise to the judgment, and the subsequent enforcement efforts, were subject to a binding agreement to arbitrate that had not been honored.

On April 9, 2025, Appellant initiated a pro se action in the United States District Court for the Eastern District of Michigan, seeking to compel arbitration under 9 U.S.C. § 4 and to obtain declaratory relief under 28 U.S.C. § 2201 confirming that he bore no individual liability in connection with the corporate judgment. He simultaneously filed an application to proceed in forma pauperis, and on April 11, 2025, moved for a temporary restraining order to stay enforcement pending resolution of the federal claim.

**Procedural Background**

On April 9, 2025, Plaintiff-Appellant filed a pro se complaint in the United States District Court for the Eastern District of Michigan. The complaint [ECF NO.1, PageID.2–3] was accompanied by an application to proceed without prepayment of fees or costs under 28 U.S.C. § 1915 [ECF NO.2, PageID.5–53]. Two days later, Appellant filed a Motion for Temporary Restraining Order (TRO) [ECF NO.4, PageID.54–87], seeking emergency relief in connection with ongoing post-judgment enforcement activities in state court. The district court scheduled a hearing on the TRO for April 18, 2025 [ECF NO.5, PageID.88].

Before the hearing could occur, the district court issued an Opinion and Order on April 16, 2025, granting the IFP application and sua sponte dismissing the complaint under the Rooker-Feldman doctrine [ECF NO.10, PageID.93–97]. The order dismissed the TRO motion as moot and did not invite amended pleadings or responsive briefing.

On April 17, 2025, Appellant filed a Motion for Leave to File a First Amended Complaint [ECF NO.11, PageID.98–108]. On April 24, 2025, the district court denied the motion, not on jurisdictional grounds, but on a newly introduced rationale that amendment would be futile [ECF NO.12, PageID.129–131]. The court interpreted the governing arbitration clause to apply only to "claims by Customer," and declined to consider whether threshold arbitrability questions had been delegated to an arbitrator.

On April 25 and April 28, 2025, Appellant filed a Renewed Motion for Leave to Amend [ECF NO.13, PageID.132–140] and a Motion for Reconsideration [ECF NO.14, PageID.141], accompanied by a supporting declaration [ECF NO.15, PageID.142–143]. These filings represented Appellant's first opportunity to address the newly raised futility rationale. On May 2, 2025, the district court denied both motions in a single order [ECF NO.16, PageID.144–149], again without addressing the delegation clause incorporated by reference in the arbitration agreement.

On May 4, 2025, Appellant moved to vacate the earlier orders pursuant to Federal

Rule of Civil Procedure 60(b)(4), asserting that the court lacked subject-matter jurisdiction to resolve arbitrability under the Federal Arbitration Act [ECF NO.17, PageID.150]. A supporting brief [ECF NO.18, PageID.161–167] and declaration [ECF NO.19, PageID.168–173] were filed in support. On May 9, 2025, the district court denied the Rule 60(b)(4) motion [ECF NO.20, PageID.174–180] and imposed a prefiling restriction barring Appellant from filing *any* further motions in the case without prior leave of court. There was no exception contained in the order for a motion seeking leave to file any further motions.

A timely Notice of Appeal was filed on May 12, 2025.

## B. Statutory Background

The statutory provisions relevant to this case trace their origins to foundational federal policy goals: promoting private dispute resolution, ensuring access to courts regardless of wealth, and preserving the limited jurisdiction of federal courts in relation to state judgments. Each statute invoked during the district court proceedings reflects a specific historical concern and legislative intent.

### The Federal Arbitration Act of 1925

Congress enacted the Federal Arbitration Act (FAA) in 1925 to reverse judicial hostility to arbitration agreements and to place such agreements "upon the same footing as other contracts" in federal and state courts. As explained in the legislative debates leading to its passage, the FAA was designed to ensure that commercial

parties could rely on private arbitration to resolve disputes without resorting to litigation, especially in interstate commerce. The Act was not intended to confer new federal jurisdiction, but rather to provide procedural enforcement mechanisms for existing agreements.

The operative provisions at issue—Sections 2, 3, and 4—codify this framework. Section 2 establishes the enforceability of written arbitration clauses in contracts "evidencing a transaction involving commerce." Section 3 authorizes a stay of court proceedings when a dispute is subject to arbitration. Section 4 permits a party aggrieved by another's refusal to arbitrate to petition a federal court for an order compelling arbitration. These provisions are routinely applied to commercial transactions involving goods or services across state lines. In this case, Appellant relied on the FAA to petition for enforcement of an arbitration clause that governed the parties' prior course of dealing and the underlying contract dispute.

## 28 U.S.C. § 1915 – Informa Pauperis Screening

The IFP statute, first enacted in the late 19th century and substantially revised in the Prison Litigation Reform Act of 1996, was intended to facilitate access to the federal courts by individuals unable to afford filing fees, while deterring abusive filings. Section 1915(e)(2)(B), added in its current form in 1996, requires a district court to screen complaints filed by IFP applicants and to dismiss any action that is frivolous, malicious, fails to state a claim, or seeks relief unavailable at law.

Legislative reports emphasized that this screening mechanism was to serve as a filter for clearly baseless or legally untenable claims—not as a substitute for adversarial adjudication. The statute was not intended to impose heightened pleading burdens on pro se or indigent litigants, nor to permit preemptive dismissal of factually grounded claims invoking recognized statutory rights. In this case, the district court granted IFP status under § 1915(a), and then sua sponte dismissed the complaint under § 1915(e)(2)(B)(i)–(ii) prior to any hearing or response by the named defendant.

**Federal Rule of Civil Procedure 15(a)(2)**

Rule 15(a)(2) reflects a longstanding principle of liberal pleading and the belief that litigants should be afforded the opportunity to clarify or adjust their claims early in the litigation. Adopted in 1937 as part of the original Federal Rules of Civil Procedure, Rule 15 has been interpreted to require leave to amend absent undue delay, bad faith, or prejudice to the opposing party.

As early federal decisions made clear, amendment should be "freely given when justice so requires," particularly where no responsive pleading has been filed and the amendment is intended to cure a perceived jurisdictional or procedural deficiency. In this case, Appellant sought leave to amend within one day of the initial dismissal and before any defendant had entered an appearance—timing that falls squarely within the rule's intended application.

**Federal Rule of Civil Procedure 60(b)(4)**

Rule 60(b), also originating from the 1937 Rules, codifies the historic equitable authority of courts to relieve parties from final judgments under defined circumstances. Subsection (b)(4), in particular, preserves the traditional rule that a judgment entered without jurisdiction is void. Unlike other grounds for relief under Rule 60, a void judgment is subject to mandatory relief; courts lack discretion to deny a meritorious motion under Rule 60(b)(4).

The Supreme Court has emphasized that a judgment is void under this rule only if the rendering court lacked subject-matter jurisdiction or violated the movant's due process rights. In this case, the Appellant invoked Rule 60(b)(4) to challenge a sua sponte dismissal order that allegedly exceeded the district court's authority under the FAA.

**The Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine is a judicially created limitation on federal subject-matter jurisdiction. It stems from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), which held that federal district courts cannot review final judgments of state courts, and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which applied the same principle to bar collateral review of state judicial decisions.

Congress has never codified the doctrine; it is rooted in the structural premise that

the U.S. Supreme Court alone may exercise appellate jurisdiction over state-court decisions. Subsequent decisions, including *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), clarified that the doctrine applies only when a party "seeks relief from a state court judgment" and not when the federal claim is independent, even if it implicates issues previously adjudicated in state court. In this case, the district court cited Rooker-Feldman as the basis for its sua sponte dismissal, notwithstanding the Appellant's assertion of statutory rights independent of any state-court ruling.

## 28 U.S.C. § 1651 – The All-Writs Act and Prefiling Restrictions

The All-Writs Act, codified at 28 U.S.C. § 1651, dates back to the Judiciary Act of 1789. It grants federal courts the authority to issue "all writs necessary or appropriate in aid of their respective jurisdictions." This residual authority is generally used to preserve the integrity of judicial proceedings and to prevent abuses of process.

Courts have invoked § 1651 to impose prefiling restrictions in exceptional cases where a litigant repeatedly files frivolous or duplicative pleadings. However, longstanding precedent requires that such restrictions be supported by detailed findings and preceded by notice and an opportunity to be heard. In this matter, the district court entered a prefiling restriction after denying Rule 60 relief, citing no pattern of vexatious behavior and without affording Appellant prior notice or the opportunity to oppose the restriction.

# IV.    SUMMARY OF THE ARGUMENT

This appeal arises from the dismissal of a pro se petition to compel arbitration under the Federal Arbitration Act (FAA), the denial of leave to amend the complaint, the court's decision to resolve arbitrability on the merits despite a valid delegation clause, the denial of Rule 60(b)(4) relief, and the imposition of a prefiling restriction—all without briefing, notice, or opportunity to be heard. At each stage, the district court acted sua sponte and deprived Appellant of meaningful access to the adversarial process.

First, the district court erred in invoking the Rooker-Feldman doctrine to dismiss the complaint. Appellant was not a party to the underlying state-court default judgment and did not seek to set it aside. Rather, he filed an independent federal claim seeking prospective relief under 9 U.S.C. § 4 to enforce a contractual arbitration clause predating the state proceedings. Federal jurisdiction over such claims is well-established and not precluded by Rooker-Feldman.

Second, the court abused its discretion in denying leave to amend the complaint under Rule 15(a)(2). The proposed amendment, submitted one day after dismissal, expressly disclaimed any request to disturb the state judgment and narrowed the claim to arbitration and declaratory relief. No defendant had appeared, and no responsive pleading had been filed. The denial of amendment on futility grounds—

without adversarial process—was inconsistent with Rule 15's liberal standard and premature at the pleadings stage.

Third, the district court exceeded its jurisdiction by resolving the scope of arbitrability. The arbitration clause at issue expressly incorporates the AAA Rules, which delegate gateway questions of arbitrability to the arbitrator. Once the court acknowledged a valid agreement governed the dispute, it was required under the FAA to refer the issue to arbitration and lacked authority to resolve it sua sponte.

Fourth, the court's denial of Rule 60(b)(4) relief was error. A judgment rendered in excess of jurisdiction or without due process is void. The dismissal order acknowledged a governing arbitration agreement but proceeded to adjudicate arbitrability in contravention of the FAA's limits. Appellant was never afforded notice or a hearing prior to dismissal, rendering the judgment subject to mandatory vacatur.

Fifth, the district court imposed a sweeping prefiling restriction without any finding of frivolous or abusive litigation conduct. Appellant had submitted only a limited number of filings in good faith, each responsive to evolving court orders. The restriction was imposed without notice, hearing, or any procedural safeguards, in violation of established standards under the All-Writs Act and Sixth Circuit precedent.

These errors, taken together, deprived Appellant of his statutory rights and foreclosed fair access to the courts. The judgment and prefiling restrictions should be vacated, and the matter remanded for proper adjudication consistent with federal law and due process.

## V.    STANDARD OF REVIEW

### (1)    Dismissal for Lack of Jurisdiction under the Rooker-Feldman Doctrine

The Court reviews de novo a district court's dismissal for lack of subject-matter jurisdiction, including application of the Rooker-Feldman doctrine. *McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006).* Whether a federal claim constitutes an impermissible de facto appeal of a state-court judgment or arises from an independent injury is a question of law subject to plenary review. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005); *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020).

### (2)    Denial of Leave to Amend Under Rule 15(a)(2)

The denial of leave to amend a complaint under Federal Rule of Civil Procedure 15(a)(2) is reviewed for abuse of discretion. However, the legal basis for denying amendments-such as futility or jurisdictional insufficiency—is reviewed de novo. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021). A court abuses its discretion when it denies amendment without first affording notice or opportunity to be heard. *Tingler v. Marshall*, 716 F.2d 1109,

1112 (6th Cir. 1983).

**(3)    Jurisdictional Overreach under the Federal Arbitration Act**

Whether the district court exceeded its statutory authority under the FAA by resolving arbitrability despite a valid delegation clause is reviewed de novo. When a court is presented with an arbitration agreement that incorporates the AAA rules, it must honor the parties' agreement to delegate threshold questions of arbitrability to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020).

**(4)    Denial of Relief Under Rule 60(b)(4)**

A final order on Rule 60(b)(4) motion is reviewed de novo because whether a judgment is void is a question of law. Relief under Rule 60(b)(4) is mandatory where a court lacked subject-matter jurisdiction or entered judgment in violation of due process. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995).

**(5)    Imposition of Prefiling Restrictions**

The imposition of a prefiling restriction is reviewed for abuse of discretion. However, constitutional due process requirements—notice, an opportunity to be heard, and a finding of abusive conduct—must be satisfied before such restrictions may be imposed. Failure to adhere to these requirements constitutes reversible error.

*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996).

## VI.    ARGUMENT

### (1)    The District Court Erred in Dismissing the Complaint Under the Rooker-Feldman Doctrine

On April 11, 2025, Plaintiff-Appellant Andrew Linares filed a motion for a temporary restraining order (TRO) [ECF No. 4], seeking to halt enforcement of a state-court subpoena issued in connection with a default judgment obtained against HATSOFF Holdings Inc.—a nonprofit entity from which he had resigned months earlier. The complaint invoked the Federal Arbitration Act (FAA), 9 U.S.C. § 4, asserting that the dispute was subject to a binding arbitration clause incorporated in Lowe's Terms of Sale. The district court scheduled a hearing [ECF No. 5], implicitly recognizing the federal claim as colorable. Yet five days later, without briefing or adversarial input, the court sua sponte dismissed the case under the Rooker-Feldman doctrine [ECF No. 10].

### A. The Dismissal Misapplied Rooker-Feldman by Mischaracterizing a Prospective Contract Enforcement Action as an Appellate Attack

The district court's application of Rooker-Feldman was legally erroneous. Appellant's complaint did not seek to overturn, vacate, or modify a state-court judgment. It sought prospective enforcement of a contractual arbitration agreement

between HATSOFF and Lowe's—an agreement that predated the state court action and governed the underlying transactions. Appellant was not a party to the state judgment, was never served, and had no opportunity to appear. His complaint challenged only the subpoena enforcement actions directed at him personally as a nonparty.

While the pro se complaint used language that may have mirrored elements of post-judgment litigation—for instance, referencing "post-judgment enforcement" and seeking a declaration that Appellant was not liable—those statements must be read in context. The complaint was submitted using the district's standardized IFP form, which constrains narrative development and can generate imprecise phrasing. When viewed holistically, the complaint's substance was unmistakable: it invoked federal statutory rights to compel arbitration and enjoin enforcement actions inconsistent with the governing contract. That is not a collateral attack on a judgment—it is an independent claim for prospective relief. See *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) ("[I]f there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.").

Appellant had no opportunity to raise his contractual rights in the state proceeding and sought relief under a federal statute that empowers courts to compel arbitration in ongoing disputes. The fact that those enforcement efforts were rooted in a prior judgment does not transform a forward-looking FAA claim into an appeal. Rooker-

Feldman "is a narrow doctrine," inapplicable unless the federal plaintiff both (1) lost in state court and (2) seeks federal review of the judgment itself. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Neither prong was met.

## B. The District Court's Sua Sponte Dismissal Without Notice or Hearing Deprived Appellant of Procedural Fairness

Even assuming jurisdictional concerns were valid, the court erred in disposing of the case sua sponte without notice, briefing, or the hearing it had already scheduled. As of April 11, 2025, a TRO hearing was on calendar [ECF No. 5]. But instead of allowing the matter to proceed—or inviting clarification—the court abruptly dismissed the case on April 16, 2025, citing a jurisdictional rationale that Appellant never had a chance to address.

This bypass of basic procedural protections contravened Sixth Circuit precedent. Courts may dismiss IFP complaints under 28 U.S.C. § 1915(e)(2)(B), but only where the claims are frivolous, malicious, or clearly defective. None of those conditions applied. The complaint stated a plausible claim under the FAA and identified specific contractual terms supported by attached exhibits. Where claims are facially colorable, sua sponte dismissal without notice or leave to amend violates core fairness principles. See *Tingler v. Marshall*, 716 F.2d 1109, 1111 (6th Cir. 1983) (plaintiff must be "given notice and an opportunity to amend or respond" before sua sponte dismissal).

This is especially true for pro se litigants. Appellant filed using a government-issued form designed to lower access barriers but ill-suited for presenting complex contractual theories. Within days of dismissal, Appellant sought leave to amend and submitted a typewritten proposed complaint that more clearly set forth his theory of the case. That motion was denied—not on the original Rooker-Feldman grounds, but on an entirely new rationale, without briefing. The result was a moving target: dismissal, then denial of amendment, each grounded in distinct and unbriefed theories.

The district court's actions thus deprived Appellant not only of a ruling on the merits, but of any opportunity to meaningfully participate in his case. He was denied adversarial process, denied the chance to clarify, and ultimately barred from access to a forum that Congress explicitly authorized to enforce arbitration agreements. This was not judicial economy. It was procedural foreclosure.

**(2)  The District Court Abused Its Discretion by Denying Leave to Amend Based on a Sua Sponte Interpretation of Arbitrability at the Pleading Stage**

The district court denied Plaintiff-Appellant's motion for leave to file a First Amended Complaint on the ground of futility [RE 12, PageID.129–131], concluding sua sponte that the arbitration clause in Lowe's Terms of Sale did not apply to claims brought by the seller. That ruling exceeded the bounds of judicial discretion at the

pleading stage and contravened the principle of party presentation.

No party had raised a challenge to arbitrability, and no defendant had appeared, let alone moved to dismiss on that basis. The district court acted unilaterally—without the benefit of briefing, adversarial testing, or notice to the pro se litigant—and resolved a gateway issue that was contractually delegated to the arbitrator under the incorporated rules of the American Arbitration Association (AAA). See *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.").

Under the Federal Arbitration Act, the incorporation of AAA rules into a commercial arbitration agreement constitutes "clear and unmistakable" evidence that questions of arbitrability are for the arbitrator to decide. Id.; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Absent a specific challenge to the delegation clause itself—which was never made—the court had no authority to reach the merits of arbitrability.

By deciding this threshold issue sua sponte, the court violated the adversarial structure of federal litigation. As the Supreme Court has emphasized, "[I]n our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The court's

discretionary authority to deny amendment as futile is not a license to raise and resolve legal arguments unpresented by either party, particularly on matters outside the court's jurisdiction once delegation has been established.

Moreover, the denial occurred at the pleading stage—before any responsive pleading had been filed. Under Rule 15(a)(2), leave to amend should be "freely given when justice so requires," especially where, as here, the proposed amendment removed the basis for the initial dismissal, narrowed the claims, and asserted a facially valid federal cause of action under the FAA. See *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility may justify denial of amendment only where it is clear from the pleadings and the governing law that the amendment would not survive a motion to dismiss. Here, no such motion was filed, and the only futility determination came from the court's sua sponte interpretation of a delegated issue it lacked authority to decide.

The district court's discretionary authority to manage its docket does not extend to resolving delegated arbitrability issues unilaterally and using that resolution to foreclose otherwise permissible amendment. That procedural shortcut was both legally improper and structurally prejudicial.

For these reasons, the denial of leave to amend should be vacated and remanded for further proceedings consistent with the FAA and the procedural safeguards of Rule 15.

## A. This Futility-Based Ruling Was Procedurally Deficient Under *Tingler* and Rule 15

Even if the court believed the amended complaint was ultimately unpersuasive, it erred by resolving that legal question without providing Appellant notice, an opportunity to respond, or an evidentiary record. As the Sixth Circuit reaffirmed in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983), a district court may not sua sponte dismiss a pro se claim on legal grounds without (1) providing notice of its intention to do so, and (2) offering the litigant a meaningful opportunity to respond. See also *Doe v. Oberlin College*, 60 F.4th 345, 356–57 (6th Cir. 2023).

Here, the futility rationale was introduced for the first time in the court's order denying leave to amend. No defendant had raised this argument. No adversarial briefing occurred. Appellant was not given any opportunity to contest the court's interpretation of the contract or to point to relevant factual or legal authority supporting arbitrability. That process failure is especially significant because the question of whether a claim is subject to arbitration is highly fact- and context-dependent and is often resolved with the aid of briefing and a record.

The Sixth Circuit has made clear that futility must be determined by applying the Rule 12(b)(6) standard, assuming the facts in the complaint are true and construing them in the Appellant's favor. *Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021). The court here did the opposite—resolving a contested legal issue against

Appellant without service, process, or response. This procedure violated both Rule 15 and basic norms of due process.

## B. The Amended Complaint Stated a Plausible Federal Claim and Should Have Been Allowed to Proceed

The amended complaint asserted a plausible claim for relief under the FAA, 9 U.S.C. § 4. Lowe's was alleged to have initiated post-judgment enforcement actions against Appellant in his individual capacity, despite the existence of a valid arbitration agreement binding the parties and requiring that all disputes be submitted to arbitration. Whether Lowe's claim for nonpayment is ultimately covered by the clause is a question of contract interpretation—not grounds for dismissing the case sua sponte, without process, as legally futile.

At minimum, Appellant should have been permitted to proceed to the next stage of litigation or to amend further in light of the court's ruling. The denial of leave to amend, rendered without procedural safeguards and without adversarial development, amounted to an unjust dismissal of a federal claim brought in good faith by a pro se litigant acting under a facially valid federal statute.

## (3) The District Court Erred by Deciding Arbitrability Itself Despite the Parties' Delegation of that Question to the Arbitrator

The district court committed reversible error by resolving the issue of arbitrability sua sponte—despite a clear and unmistakable delegation of that question to the

arbitrator through the incorporation of the American Arbitration Association (AAA) rules in the Lowe's Terms of Sale. As the court itself acknowledged in denying leave to amend [ECF No. 12, PageID.129], the arbitration clause mandates that "all claims by Customer...shall be resolved by binding arbitration...under the current applicable rules, procedures, and protocols of the American Arbitration Association (AAA)." This incorporation constitutes controlling evidence that the parties agreed to delegate gateway questions of arbitrability to the arbitrator, not the court.

Under binding precedent, such incorporation satisfies the "clear and unmistakable" standard required to delegate arbitrability. See *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020). The Sixth Circuit has consistently enforced delegation provisions where AAA rules are incorporated, requiring courts to defer such questions to the arbitrator, absent a specific challenge to the delegation clause itself. See *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021); *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).

Despite this, the district court sua sponte concluded that the arbitration clause applied only to claims *by* the customer—not claims against the customer—and held that amendment would be futile on that basis. But by interpreting the clause on its own, without addressing the incorporated AAA rules or the enforceability of the

delegation clause, the court acted beyond its jurisdiction under the FAA and disregarded Supreme Court authority. See *Henry Schein*, 139 S. Ct. at 529–30 (rejecting a "wholly groundless" exception and holding that courts must refer arbitrability to the arbitrator where a delegation exists).

Critically, no party ever challenged the delegation clause. No defendant had even appeared, and the issue of arbitrability was never briefed. The district court resolved this question sua sponte at the pleading stage—overstepping its role as a neutral arbiter and violating the principle of party presentation. See *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[C]ourts are essentially passive instruments of government. They do not...assume the role of advocate."). Where a court interprets contract terms not placed in issue by the parties and uses that interpretation to preclude amendment, it abuses its discretion.

Moreover, the court's merits-based interpretation of the arbitration clause as excluding enforcement actions at the pleadings stage—prior to any factual development or adversarial testing—was doubly inappropriate given the delegation of arbitrability. Whether Lowe's claim was covered by the clause is a scope question reserved for the arbitrator. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("[A]rbitrability is decided by the arbitrator if the parties so agreed."). Accordingly, the district court not only erred in denying leave to amend— it exceeded its authority under the FAA. The denial should be reversed and the case

remanded so the arbitrator may resolve the question of arbitrability in the first instance, consistent with the parties' agreement and controlling federal law.

## A. The FAA Requires Courts to Honor Delegation of Arbitrability Questions Where Clear and Unmistakable Evidence Exists

Under § 4 of the Federal Arbitration Act, a district court's role is strictly limited: it must determine whether a valid agreement to arbitrate exists. Where the parties have "clearly and unmistakably" delegated threshold questions of arbitrability to the arbitrator, the court must refrain from deciding those issues and instead compel arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

In the Sixth Circuit, incorporation of the American Arbitration Association (AAA) Rules into the arbitration clause constitutes clear and unmistakable evidence of such delegation. In *Blanton v. Domino's Pizza Franchising LLC*, the court held:

"[D]istrict courts in our circuit have long found that the incorporation of the AAA Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 845–46.

This rule follows the AAA's own provisions, which delegate to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." See AAA Commercial Arbitration Rule R-7(a).

Here, the Terms of Sale plainly incorporated the AAA Commercial Rules: "All claims by Customer … shall be resolved by binding arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association." *ECF No. 12, PageID.129.* The district court itself recognized that the Terms of Sale "presumably govern the alleged nonpayment underlying this dispute." *ECF No. 16, PageID.147.*

Accordingly, the court was bound under *Blanton* and *Henry Schein* to refer all questions of arbitrability—including scope—to the arbitrator, and had no jurisdiction to rule on those gateway issues.

## B. The District Court Improperly Resolved Arbitrability on the Merits Despite Recognizing the Delegation Clause

Despite this mandatory delegation, the district court proceeded to decide, as a matter of law, that the arbitration clause did not cover Appellant's claim. The court reasoned that "[b]y its plain language, the clause applies to 'claims by Customer' only," and thus a collection dispute initiated by the seller was categorically excluded. *ECF No. 12, PageID.129–130.* This analysis went to the scope of arbitrability, not the existence of the agreement—and that issue had already been delegated to the AAA. The Supreme Court expressly rejected this kind of judicial overreach in *Henry Schein*, holding that courts may not "short-circuit the process" by deciding arbitrability themselves, even if they believe the claim is not subject to arbitration.

"[W]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein,* 139 S. Ct. at 530. *Id. at 529.*

The Sixth Circuit has similarly warned that even "seemingly straightforward" questions of contract scope cannot be resolved by the court when delegation is present. *Blanton*, 962 F.3d at 846–47. Here, the district court did precisely what the FAA prohibits: it bypassed the delegation clause and unilaterally adjudicated arbitrability based on its own textual interpretation—without notice, briefing, or adversarial input.

## C. The Court's Exercise of Jurisdiction Was Improper and the Judgment Must Be Vacated

By resolving the question of arbitrability despite the parties' express delegation to the AAA, the district court acted beyond the limits of its statutory authority. Under the FAA, once a valid delegation clause is identified, the court must "compel arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The court's interpretation of the arbitration clause—made sua sponte, without an evidentiary record, and in direct contravention of delegation—constitutes reversible legal error. The judgment must be vacated, and the matter remanded with instructions to compel arbitration and allow the arbitrator to determine the gateway issues of scope and applicability.

**(4)   The District Court's Refusal to Vacate Its Jurisdictionally Defective**

**Judgment Was Error Requiring Mandatory Relief Under Rule 60(b)(4)**

Plaintiff-Appellant respectfully submits that the district court erred in denying his motion to vacate judgment under Federal Rule of Civil Procedure 60(b)(4), as the judgment it entered was void for lack of subject matter jurisdiction. Once the district court acknowledged that the arbitration agreement at issue incorporated the American Arbitration Association (AAA) rules, it was jurisdictionally barred from deciding arbitrability. Instead, the court sua sponte evaluated the scope of the arbitration clause and denied leave to amend on futility grounds—despite being divested of authority to reach that question. This action exceeded the court's lawful powers and rendered the resulting order void, requiring vacatur as a matter of law.

Under the Federal Arbitration Act (FAA) and binding precedent, including *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 139 S. Ct. 524, 529–30 (2019), and *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020), the incorporation of AAA rules constitutes "clear and unmistakable" evidence that the parties delegated threshold questions of arbitrability to the arbitrator. Here, the district court's own order denying leave to amend expressly acknowledged the clause's incorporation of the AAA rules (ECF No. 12, PageID.129), thus confirming that arbitrability was no longer a judicial question. Despite this recognition, the court proceeded to interpret the scope of the contract and deny leave to amend based on its own view of whether the dispute was covered

by the arbitration agreement—precisely the kind of question that must be referred to the arbitrator when a valid delegation clause is present.

The denial of leave to amend for futility was not only procedurally premature—issued at the pleading stage, before service or responsive briefing—it was substantively unauthorized under controlling authority. The court's ruling directly contravened *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010), and Sixth Circuit precedent, which hold that unless a party specifically challenges the delegation provision itself (which Plaintiff-Appellant did not), the court must enforce the parties' agreement to arbitrate arbitrability. See *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582–83 (6th Cir. 2021); *I.C. v. StockX, LLC*, 19 F.4th 873, 878 (6th Cir. 2021). This is not a matter of judicial discretion, it is a jurisdictional limitation imposed by contract and statute alike.

Plaintiff-Appellant's Rule 60(b)(4) motion raised these points squarely. It was not a collateral attack or a mere request for reconsideration, but a jurisdictional challenge grounded in well-established FAA doctrine. A judgment entered by a court lacking subject matter jurisdiction is void and must be vacated. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 (10th Cir. 1991). There is no discretionary leeway where a court has acted ultra vires; Rule 60(b)(4) relief is mandatory. By denying that motion, the district court perpetuated a void judgment and compounded its earlier jurisdictional

overreach.

This litigation has been conducted in good faith by a first-time pro se litigant who followed every procedural rule, responded promptly to court orders, and sought relief exclusively through authorized judicial channels. Plaintiff-Appellant's conduct reflects diligent and procedurally proper litigation—not abusive or frivolous filings. At each stage, Plaintiff-Appellant engaged with the court on the merits, offering to amend his complaint to address any deficiencies and invoking binding arbitration law in a nonfrivolous, statutorily grounded manner. The denial of Rule 60(b)(4) relief in the face of this record reflects a breakdown of procedural safeguards that the FAA, the Federal Rules of Civil Procedure, and basic due process are designed to prevent. Each of these errors independently renders the judgment void.

Accordingly, vacatur under Rule 60(b)(4) is not only appropriate, it is required.

## A. The Rule 60(b)(4) Motion Was Not Duplicative and Presented a Distinct Jurisdictional Challenge

The district court erred in denying Appellant's motion for relief under Rule 60(b)(4), which presented a legal issue distinct from any prior filings and asserted that the court's dismissal order was void for lack of jurisdiction. The Rule 60(b)(4) motion did not merely restate arguments previously raised in Appellant's Rule 59(e) motion for reconsideration. Rather, it presented a jurisdictional challenge grounded in the

narrow and well-recognized exception that allows void judgments to be vacated where the issuing court lacked authority to render them. Specifically, Appellant argued that the court, having acknowledged the existence of a binding arbitration agreement governing the underlying commercial dispute, acted in excess of its statutory authority under the Federal Arbitration Act (FAA) when it sua sponte ruled on the scope of arbitrability. This legal issue was not previously addressed in any order and was presented for the first time through a motion that is distinct in both nature and function from reconsideration.

A judgment is void under Rule 60(b)(4) only in rare circumstances—typically where the court lacked subject-matter jurisdiction or where a party was denied due process. Appellant's motion fell squarely within the former category. In its prior ruling, the district court expressly stated that "Defendant's terms of sale presumably govern the alleged nonpayment underlying this dispute." (ECF No. 16, PageID.147.) This acknowledgment confirmed the applicability of the arbitration clause contained in those terms, which incorporated the rules of the American Arbitration Association (AAA). Under settled Sixth Circuit precedent, the incorporation of AAA rules constitutes "clear and unmistakable" evidence that the parties agreed to delegate threshold questions of arbitrability to the arbitrator. See *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020).

Once the district court found a valid arbitration agreement governed the dispute and

incorporated AAA rules, it no longer had jurisdiction to resolve arbitrability on the merits. The FAA requires courts to compel arbitration and defer questions of scope to the arbitrator when such a delegation clause exists. By proceeding to determine arbitrability sua sponte, the district court violated the express terms of the arbitration agreement and exceeded the jurisdictional limits imposed by 9 U.S.C. § 4. That rendered its judgment void and subject to mandatory vacatur under Rule 60(b)(4). Appellant's motion presented this legal proposition for the first time, and it was not duplicative of any prior filing.

In the legal context, a motion is "duplicative" when it merely repeats the same legal theory, factual basis, and request for relief already considered and resolved. That was not the case here. Although Appellant had previously argued for arbitration and raised objections to the dismissal, the Rule 60(b)(4) motion raised a distinct legal defect—that the judgment itself was jurisdictionally invalid. The argument was based on a structural bar to judicial review that had not yet been addressed by the court and could not have been waived or forfeited. While some of the underlying facts supporting the motion may have overlapped with prior filings, the nature of the legal question posed was entirely different and presented a matter of first impression. Because Rule 60(b)(4) imposes no time limit and requires courts to vacate void judgments as a matter of law, the district court had an obligation to reach the merits of Appellant's motion. Instead, it denied relief without addressing the delegation

issue or the jurisdictional limitations imposed by the FAA. This was legal error. The district court's order denying Rule 60(b)(4) relief should therefore be reversed.

**B. The Judgment Was Also Void Because It Was Entered Without Notice or an Opportunity to Respond**

In addition to exceeding its statutory authority under the FAA, the district court's rulings are independently void under Federal Rule of Civil Procedure 60(b)(4) because they were rendered in a manner that violated core constitutional principles of due process. A judgment is void for purposes of Rule 60(b)(4) if the court lacked subject-matter jurisdiction or "acted in a manner inconsistent with due process of law." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

Both conditions are satisfied here. Appellant was never served with notice. No defendant entered an appearance. No scheduling order was issued. The district court dismissed the complaint sua sponte based on a jurisdictional theory (Rooker-Feldman) that was never raised by any party and without affording Appellant an opportunity to respond. When Appellant sought leave to amend to address the court's jurisdictional concerns, the court denied the motion based on a completely new and unbriefed rationale—that the claim was "futile" due to a unilateral interpretation of the arbitration clause. Appellant again received no notice, no briefing opportunity, and no opportunity to contest that theory on the record. Appellant then challenged the ruling in a motion for reconsideration, and a renewed

motion for leave to amend, of which both were summarily denied without engaging with the underlying arguments of mutuality of remedy versus mutuality of obligation and consideration, and the doctrine of contra proferentem.

When Appellant invoked Rule 60(b)(4) to challenge the court's authority and procedural irregularities, the court denied the motion in summary fashion—without addressing the jurisdictional defect, without holding a hearing, and without acknowledging the due process concerns raised. The entire procedural arc of the case—from sua sponte dismissal to a preemptive ban on filings—was conducted without adversarial testing, responsive briefing, or even minimal procedural formality. This is precisely the kind of one-sided process that Rule 60(b)(4) is intended to remedy. *See Espinosa*, 559 U.S. at 271 ("Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Moreover, under *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983), a federal district court "may not sua sponte dismiss a complaint without giving the Appellant the opportunity to amend or respond." This obligation applies even where a complaint appears flawed, and especially where, as here, the Appellant seeks to assert a statutory federal right. The district court's refusal to allow Appellant to test its changing rationales through the adversarial process—combined with the entry of

dispositive orders on grounds never briefed—renders its rulings legally invalid.

These due process violations are not abstract. They were compounded by the imposition of a sweeping prefiling restriction, issued without notice, hearing, or any finding of bad faith. That sanction foreclosed all future filings and left Appellant unable to seek further redress. Due process demands more. The Constitution does not permit federal courts to impose final judgments while systematically denying litigants the opportunity to be heard. The order denying the Rule 60(b)(4) motion must be vacated.

**(5)** **The District Court Violated Appellant's Right to Due Process by Imposing a Prefiling Restriction Without Notice, an Opportunity to Be Heard, or a Record of Abusive Conduct**

The district court's May 9, 2025 order [ECF No. 20] imposed a prefiling restriction sua sponte, barring Appellant from filing *any* future motions without prior leave of court. *PageID.180.* The restriction was not preceded by notice, was not requested by any party, and was not supported by any record of abusive litigation conduct. The court cited no warnings, sanctions, or prior misconduct—only that Appellant had filed "three motions" contesting the court's interpretation of the arbitration clause. *PageID.179.*

This order violates Plaintiff-Appellant's constitutional right to procedural due process and Sixth Circuit precedent governing access restrictions. See *Feathers v.*

*Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) ("Before a court limits a litigant's access to the courts, it must: (1) provide the litigant with notice and an opportunity to oppose the court's order before it is implemented; and (2) create an adequate record for review.").

### A. The Court Failed to Provide the Requisite Notice and Opportunity to Be Heard

The restriction was imposed sua sponte in the final lines of the order denying Plaintiff-Appellant's Rule 60(b)(4) motion. The court offered no advance notice to Plaintiff-Appellant that such a restriction was being contemplated, and gave no opportunity to respond or oppose it. Nor did the court hold any hearing, invite briefing, or issue a show-cause order. This falls short of the minimum procedural safeguards required by Sixth Circuit precedent. *See Feathers*, 141 F.3d at 269; *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996).

As the Sixth Circuit held in *Feathers*, "[l]itigants must be provided with notice and an opportunity to respond before a court imposes prefiling restrictions." 141 F.3d at 269. The district court's failure to do so is, standing alone, a basis for vacatur.

### B. The Court Failed to Identify a Record of Vexatious or Frivolous Conduct

To justify a prefiling injunction, a district court must point to a "history of repetitive or vexatious litigation." *Feathers*, 141 F.3d at 269 In this context the holdings were

directly referring to a history of filings new complaints or actions subsequently after adjudication. In *Feathers*, the injunction was "In an effort to stanch the ongoing flow of meritless and repetitive…….cases." The notion that a property interest in such a fundamental held right like access to the court, could be constrained on the basis that "this is now the third time that…Plaintiff made some new arguments in each of his motions before the Court," renders it arbitrary and capricious that undermines the extreme conduct and articulated findings combined with procedural safeguards to justify such a severe sanction PageID.*179*

Each motion responded to new legal reasoning introduced by the court itself and was filed in accordance with the Federal Rules of Civil Procedure. At no point was Plaintiff-Appellant sanctioned, warned, or found to have acted in bad faith. The record is devoid of duplicative or abusive filings. Plaintiff-Appellant was litigating his first civil case and sought only to pursue relief under the Federal Arbitration Act. Despite this, the district court concluded that the motions were "repetitive and arguably frivolous," and cited *Micks-Harms v. Nichols*, No. 18-12634, 2019 U.S. Dist. LEXIS 188006 (E.D. Mich. Oct. 30, 2019), for the proposition that courts may impose such restrictions. *PageID.179.* But *Micks-Harms*, like *Feathers*, involved parties with a long history of meritless filings—something not present here.

A first-time pro se litigant, pursuing plausible arguments under a statute expressly enforced in federal court, cannot be deemed vexatious simply for exercising

procedural rights. It is worth noting that Plaintiff-Appellant's status as a 100%

service-disabled veteran is a relevant equitable consideration. Courts have

recognized that certain litigants face heightened barriers to access, and this status

should inform the court's exercise of discretion. The right of meaningful access to

the courts is a fundamental right of citizenship, essential for the exercise of all other

legal rights, as articulated in *Kindhearts v. Geithner* 647F.Supp.2d 857 (N.D. of

Ohio 2009) "Meaningful access to the courts is a fundamental right of citizenship in

this country. ... Indeed, all other legal rights would be illusory without it." As the

Sixth Circuit held in *Ortman*, "[a]ccess restrictions may not be based solely on

adverse rulings." 99 F.3d at 811.

## C. The Restriction Is Overbroad and Chills Access to Lawful Relief

The court's order imposes a blanket prohibition on "any further motions in this case"

without clarifying whether this includes filings authorized by Rule 59, Rule 60, or

appellate proceedings. *PageID.180.* Such ambiguity undermines the ability of a

litigant to preserve claims, seek redress, or even clarify the scope of the restriction.

Courts have cautioned that vague and unbounded prefiling restrictions chill lawful

access to judicial remedies and may violate the Constitution. See *Vineyard v. Collier*,

990 F.3d 1094, 1107–08 (8th Cir. 2021). That is especially true here, where Plaintiff-

Appellant was denied a hearing on any of his filings and was attempting in good

faith to navigate jurisdictional and procedural objections raised sua sponte by the

court.

## VII.     CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE the foregoing reasons, Plaintiff-Appellant-Appellant respectfully requests that this Honorable Court:

1. **Reverse** the district court's order dismissing the complaint for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine and hold that Plaintiff-Appellant's claims arise under federal law and do not seek appellate review of any state court judgment;

2. **Vacate** the district court's denial of leave to amend and remand with instructions to permit filing of the First Amended Complaint, which cured any alleged jurisdictional defect and stated a plausible claim for relief;

3. **Hold** that the district court exceeded its authority under the Federal Arbitration Act by adjudicating the gateway question of arbitrability despite the parties' clear delegation to the AAA, and **remand with instructions to compel arbitration** under 9 U.S.C. § 4;

4. **Grant relief under Rule 60(b)(4)** and declare the district court's judgment void where it was entered in excess of jurisdiction and without affording Plaintiff-Appellant notice or an opportunity to be heard;

5. **Vacate the prefiling restriction** as unconstitutional and procedurally

defective, where no notice, hearing, or record of abusive conduct was made, and the restriction bars Plaintiff-Appellant from any future access to relief;

6. **Remand** for further proceedings consistent with this Court's opinion, including resolution of Plaintiff-Appellant's petition to compel arbitration and declaratory relief regarding his personal non-liability; and

7. Grant such **other and further relief** as this Court deems just, equitable, and appropriate under the circumstances.

Respectfully Submitted,

ANDREW LINARES
*IN PRO PER*
*4450 HARDING ST*
*DEARBORN HEIGHTS, MI 48125*
*734-205-8788*
*andrew.ace.linares@nfnrltd.com*

*Appearing In Propria Persona for Plaintiff-Appellant*

May 31, 2025

# VIII.    CERTIFICATE OF COMPLIANCE

I, Andrew Linares, hereby certify that this brief complies with the type- volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,841 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point, Times New Roman font.

Dated: May 31, 2025

Respectfully submitted,

s/
Andrew Linares
*In Pro Per*
4450 Harding
Dearborn Heights, MI 48125
734-205-8788

## IX.      CERTIFICATE OF SERVICE

I hereby certify that on **May 31, 2025**, I caused the foregoing **Principal Brief for Plaintiff-Appellant-Appellant** to be filed and served as follows:

I. **Filed with the United States Court of Appeals for the Sixth Circuit** via email submission to the Court's official **Pro Se Electronic Filing Inbox**, in accordance with the Court's instructions for pro se litigants;

II. **Served upon counsel for Appellee Lowe's Pro Supply Co.** via the **MiFile electronic filing system** for the Wayne County Circuit Court, which provides service of documents to all registered case participants;

III. **Served upon the Clerk of the United States District Court for the Eastern District of Michigan** through the Court's **Pro Se Electronic Document Upload portal**.

Respectfully submitted,

Andrew Linares
*In Pro Per*
4450 Harding
Dearborn Heights, MI 48125
734-205-8788

# X.    ADDENDUM: REFERENCES AND INDEX

## Federal Arbitration Act (FAA), 9 U.S.C. §§ 2, 3, and 4

### 9 U.S.C. § 2
*A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

### 9 U.S.C. § 3
*If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ... shall on application of one of the parties stay the trial of the action until such arbitration has been had.*

### 9 U.S.C. § 4
*A party aggrieved by the alleged failure ... of another to arbitrate under a written agreement ... may petition ... for an order directing that such arbitration proceed in the manner provided for in such agreement.*

---

## Federal Rules of Civil Procedure

### Rule 15(a)(2)
*The court should freely give leave [to amend pleadings] when justice so requires.*

### Rule 60(b)(4)
*On motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding [if] the judgment is void.*

---

### Lowe's Terms of Sale – Section 5 (Arbitration Clause)
*All claims by Customer, including claims by Customer's members, which the parties cannot resolve informally, shall be resolved by binding arbitration conducted solely between Customer (and the relevant Customer member or members if applicable) and Seller under the current applicable rules, procedures, and protocols of the American Arbitration Association (AAA) (www.adr.org) (as amended). Class action claims, joinder or consolidation, are not permitted in any forum and both parties waive any such rights under these Terms.*

## INDEX

| Docket # | Description | Page ID #s |
|---|---|---|
| ECF NO.1 | Complaint filed by Andrew Linares | 2-3 |
| ECF NO.2 | Application to proceed without prepaying fees or costs | 5-53 |
| ECF NO.4 | Motion for Temporary Restraining Order | 54-87 |
| ECF NO.5 | Notice of Hearing on Motion for Temporary Restraining Order | 88 |
| ECF NO.6 | Notice Regarding Parties Responsibility to Notify Court of Address Changes | 89 |
| ECF NO.7 | Certificate of Service re Motion for TRO and Complaint | 90 |
| ECF NO.8 | Notice of Motion Hearing by Andrew Linares | 91 |
| ECF NO.9 | Notice of Change of Address | 92 |
| ECF NO.10 | Opinion and Order Granting IFP and Dismissing Complaint | 93-97 |
| ECF NO.11 | Motion for Leave to File First Amended Complaint | 98-108 |
| ECF NO.12 | Order Denying Motion for Leave to File First Amended Complaint | 129-131 |
| ECF NO.13 | Renewed Motion for Leave to File First Amended Complaint | 132-140 |
| ECF NO.14 | Motion for Reconsideration | 141 |
| ECF NO.15 | Declaration in Support of Motion for Reconsideration | 142-143 |
| ECF NO.16 | Order Denying Renewed Motion for Leave and Motion for Reconsideration | 144-149 |
| ECF NO.17 | Motion to Vacate Order under Rule 60(b)(4) | 150 |
| ECF NO.18 | Brief in Support of Motion to Vacate | 161-167 |
| ECF NO.19 | Declaration in Support of Motion to Vacate | 168-173 |
| ECF NO.20 | Order Denying Motion to Vacate | 174-180 |